IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DIBY AKO, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| V. § | No. 3:22-cv-1751-S | |
| § | | |
| ARRIVA BEST SECURITY, INC., § | | |
| and AMOIFO KOFFI, § | | |
| § | | |
| Defendants. § | | |

# FINDINGS, CONCLUSIONS, AND RECOMMENDATION
# OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Diby Ako has filed a Renewed Motion for Default Judgment, *see* Dkt. No. 35, which United States District Judge Karen Gren Scholer has referred to the undersigned United States Magistrate Judge for findings, conclusions, and recommendation.

For the reasons explained below, the Court should deny the Plaintiff's motion for default judgment [Dkt. No. 35].

## Background

Diby Ako filed his complaint in this court against defendants Arriva Best Security, Inc. ("ABS") and Amoifo Koffi alleging violations of the Fair Labor and Standards Act ("FLSA"). *See* Dkt. No. 1 at 1.

Mr. Ako alleges that the Defendants did not compensate him for any of the work he performed during his employment with ABS as a Firewatch Services Guard from September 2020 to September 2021. *See id.* at 3, 4. And Mr. Ako alleges that the

-1-

Defendants willfully violated 29 U.S.C. §§ 206 and 207 when they employed employees engaged in commerce for an hourly rate less than the federal minimum wage and did not pay the Plaintiff one and one-half times regular wages for the hours he worked over forty hours in a week. *See* Dkt. No. 1 at 6; Dkt. No. 35 at 4.

The Plaintiff served Defendants with the complaint on August 24, 2022, and March 18, 2023, respectively. *See* Dkt. No. 6, 7, 19, 20.

After Defendants did not respond, Mr. Ako requested that the Clerk of the Court enter default against them. *See* Dkt. No. 13; Dkt. No. 25.

The Clerk entered a default against Mr. Koffi on February 22, 2023, *see* Dkt. No. 16, and against ABS on August 30, 2023, *see* Dkt. No. 27.

Mr. Ako then filed a motion for default judgment. *See* Dkt. No. 21.

United States Magistrate Judge Irma Ramirez found that Mr. Ako did not meet the procedural requirements for default judgment against Mr. Koffi. *See* Dkt. No. 31 at Dkt. No. 7. As to ABS, Judge Ramirez found that the Original Complaint did not sufficiently allege facts demonstrating individual or enterprise coverage. *See id* at 11. On October 5, 2023, Judge Ramirez recommended that the Court deny without prejudice the Plaintiff's Motion for Default Judgment for the Defendants, *see id.* at 14, and Judge Scholer accepted the recommendation, *see* Dkt. No. 32.

Mr. Ako now renews his request for a default judgment. *See* Dkt. No. 35.

## Legal Standards

Federal Rule of Civil Procedure 55(b)(2) governs applications to the Court for default judgment. *See* FED. R. CIV. P. 55(b)(2). A plaintiff seeking a default judgment

must establish: (1) that the defendant has been served with the summons and complaint and that default was entered for its failure to appear; (2) that the defendant is neither a minor nor an incompetent person; (3) that the defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) that, if the defendant has appeared in the action, the defendant was provided with notice of the application for default judgment at least three days prior to the hearing. *See Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. 3:12-cv-2092-M, 2013 WL 145502, at *2-*3 (N.D. Tex. Jan. 14, 2013). The plaintiff must also make a *prima facie* showing there is "jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

> In the Fifth Circuit, three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment by the district court. *See New York Life Ins. Co. v. Brown,* 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *See id.* The clerk will enter default when default is established by an affidavit or otherwise. *See id.* After the clerk's entry of default, a plaintiff may apply to the district court for a judgment based on such default. *See id.*
>
> The Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments. *See Rogers v. Hartford Life & Accident Ins. Co.,* 167 F.3d 933, 936 (5th Cir. 1999); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n,* 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations."). But this policy is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers,* 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino,* 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)); *see also Merrill Lynch Mortg. Corp. v. Narayan,* 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

*Arch Ins. Co.*, 2013 WL 145502, at *2-*3.

Before entering a default judgment, a court should consider any relevant factors. Those factors may include "(1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion." *Arch Ins. Co.*, 2013 WL 145502, at *3 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). The Court should also consider whether the defendant has a meritorious defense to the complaint. *See id.* Further, "a defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Lindsey,* 161 F.3d at 893.

An entry of default "does not establish the amount of damages. After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *United States of Am. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (cleaned up); *cf. Jackson v. FIE Corp.*, 302 F.3d 515, 524-31 (5th Cir. 2002) (holding that jurisdictional allegations and findings supporting a default judgment are not entitled to preclusive effect in the personal-jurisdiction context of Federal Rule of Civil Procedure 60(b)(4)). A court may enter default judgment against a party and determine damages without the benefit of an evidentiary hearing "where the amount claimed is a liquidated sum or one capable of

mathematical calculation." *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (cleaned up).

## Analysis

I. <u>The Court has subject matter jurisdiction and personal jurisdiction.</u>

Mr. Ako has shown the Court has subject matter jurisdiction. The Court has jurisdiction under 28 U.S.C. § 1331 because Mr. Ako alleges violations of the FSLA, a federal law. *See* Dkt. No. 1.

"A judgment without personal jurisdiction is void," and a "district court has the duty to ensure it has the power to enter a valid default judgment." *Sys. Pipe & Supply*, 242 F.3d at 324. In assessing personal jurisdiction, "the Texas long-arm statute extends to the limits of federal due process." *Bulkley & Associates, L.L.C. v. Dep't of Indus. Relations, Div. of Occupational Safety & Health of the State of California*, 1 F.4th 346, 351 (5th Cir. 2021). Federal due process requires that "the suit aris[es] out of or relate[s] to the defendant[s'] contacts with" Texas. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). "[Texas] can exercise general jurisdiction where a corporate defendant has its corporate headquarters, and hence its principal place of business within [Texas]." *See id.* at 157.

ABS's Amoifo Koffi is a citizen of both California and Dallas County over whom the Court has personal jurisdiction. *See* Dkt. No. 1 at 2. And the case arises out of Mr. Ako's employment with ABS under the ownership of Mr. Koffi, which has headquarters in the Northern District of Texas, and some of the acts in question took place in the Northern District of Texas. *See* Dkt. No. 1 at 2, 3; Dkt. No. 35-1 at 2.

And, so, this Court has personal jurisdiction over Mr. Koffi and ABS.

II.     The procedural requirements are met.

Mr. Ako served ABS with the Complaint on August 23, 2022 and March 18, 2023. *See* Dkt. No. 6; Dkt. No. 19. The Clerk of the Court made an entry of default for ABS on August 30, 2023. *See* Dkt. No. 27.

Because ABS is not a natural person, it cannot be a minor or incompetent person or in the military service.

And, so, the procedural requirements are met for ABS.

Mr. Ako served Mr. Koffi with the Complaint on September 9, 2022 and March 18, 2023. *See* Dkt. No. 7; Dkt. No. 20. The Clerk of the Court made an entry of default for Koffi on February 22, 2023. *See* Dkt. No. 16.

Mr. Ako's earlier motion for default judgment stated that Mr. Koffi is not in active military service, citing the declaration of his counsel in support. *See Ako v. Arriva Best Sec., Inc.*, No. 3:22-cv-1751-S-BH, 2023 WL 7752309, at *3 (N.D. Tex. Oct. 5, 2023), *rec. adopted*, 2023 WL 7706748 (N.D. Tex. Nov. 14, 2023).

But the declaration failed to satisfy the Service Members Civil Relief Act (SCRA) because it did not provide any factual allegation to support the assertion that Mr. Koffi is not in active military service. *See id.* (citing *Countrywide Home Loans, Inc. v. Barr*, No. 3:CV-08-00389, 2008 WL 4748202, at *1 (M.D. Pa. July 10, 2008) (An affidavit must have facts not just conclusions relating to the defendant's military service. The affidavit must provide information about the efforts to determine the

defendant's military status)). Also, Mr. Ako did not provide evidence showing that Mr. Koffi is not a minor or incompetent. *See id.*

And, so, these reasons precluded Jude Ramirez from recommending entry of default judgment under Rule 55(b)(2) against Mr. Koffi. *See id.* (citing *United States v. Kees*, No. 2:16-CV-01180, 2018 WL 4473895, at *3 (W.D. La. Aug. 30, 2018), *adopted by* 2018 WL 4473651 (W.D. La. Sept. 18, 2018)).

In Mr. Ako's renewed motion for default judgment, he provides a declaration from his counsel in which the attorney describes how he used TLOxp to perform a skip trace for individuals with the name "Amoifo Koffi" which produced one result. *See* Dkt. No. 35-2 at 1. The attorney used the birthday to submit a record request for Amoifo Koffi on the SCRA website. *See id.* at 2. The SCRA's status report attached to the declaration showed that Amoifo Koffi is not an active duty servicemember. *See id.* at 3.

And, so, Mr. Ako has now satisfied the procedural requirement of showing that Mr. Koffi is not an active service member.

As for Mr. Koffi's minor and incompetent status, Mr. Ako provides a declaration from himself that Mr. Koffi appeared over the age of 40 and competent. *See* Dkt. No. 35-1 at 1. The declaration is sufficient to establish that Mr. Koffi is not a minor or incompetent. *See SEC v. Baker*, Civil Action No. 3:22-CV-1415-S-BH, 2023 WL 7390881, at *2 (N.D. Tex. Oct. 5, 2023) ("Although the declaration is sufficient to establish that Defendant is not a minor or incompetent person under Rule 55(b), it fails to satisfy the SCRA.").

And so, Mr. Ako does satisfy the procedural requirement of showing that Mr. Koffi is not a minor or incompetent.

III.  The pleadings do not support a default judgment.

Mr. Ako has alleged claims of failure to pay overtime and minimum wage in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, 203, 206, 207, 213, 216(b). The FLSA mandates that "no employer shall employ any of [his] employees ... for a workweek longer than forty hours unless such employee receives compensation for [his] employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which [he] is employed." 29 U.S.C. § 207(a)(1). The FLSA also mandates that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages...." 29 U.S.C. § 206(a).

To state a claim under Sections 206 and 207, a plaintiff must plausibly allege: "(1) that an employer-employee relationship existed during the [relevant] time [period and] ... (2) that the employee engaged in activities covered by the FLSA." *Johnson v. Heckmann Water Res., Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). The plaintiff must also allege (3) that the employer violated the FLSA's minimum wage requirements; (4) the amount of minimum wage compensation due; (5) that the employer violated the FLSA's overtime wage requirements; and (6) the amount of overtime compensation due. *See id.*; *Flores v. Act Event Servs., Inc.*, 55 F. Supp. 3d 928, 935 (N.D. Tex. 2014).

### A. An employer-employee relationship existed.

"Liability for violating the FLSA's overtime provision attaches to individuals and entities who qualify as an 'employer.'" *Kibodeaux v. A&D Interests., Inc.*, No. 3:20-CV-00008, 2022 WL 980354, at *3 (S.D. Tex. Mar. 31, 2022) (cleaned up). The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

"An employee may have multiple employers under the FLSA, in which case, 'all joint employers are responsible, both individually and jointly, for compliance with all the applicable provisions of the [FLSA].'" *Fernandez v. JaniKing Int'l, Inc.*, No. CV H-17-1401, 2018 WL 539364, at *2 (S.D. Tex. Jan. 8, 2018) (quoting 29 C.F.R. § 7912(a)).

"But it is not enough to allege, in a conclusory or collective manner, that several defendants are a plaintiff's 'employer' for FLSA purposes. Instead, '[w]here a complaint seeks to hold more than one employer liable under the FLSA, some facts at least of the employment relationship must be set forth in order to make out a facially plausible claim of multiple employer liability under the FLSA.'" *Id.* (quoting *Kaminski v. BMW Sugar Land Partners*, Civil Action No. H10-551, 2010 WL 4817057, at *2 (S.D. Tex. Nov. 19, 2010)).

The United States Court of Appeals for the Fifth Circuit uses the "economic realities" test to determine who is an employer under the FLSA. *See Gray v. Powers*, 673 F.3d 352, 354-55 (5th Cir. 2012).

To determine whether an individual or entity is an "employer," a court considers whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 355.

The Court must apply the economic realities test to each individual or entity alleged to be an employer. *See id.* But all four of the factors need not be present in each case to find an employee-employer relationship. *See id.* at 357. Rather, the Court must consider the totality of the circumstances and the economic reality of the overall relationship. *See Hodgson v. Griffin & Brand of McAllen, Inc.*, 471 F.2d 235, 237-38 (5th Cir. 1973) ("Whether appellant is an employer of the harvest workers does not depend on technical or isolated factors but rather on the circumstances of the whole activity; it depends not on the form of the relationship but on the economic reality.") (cleaned up).

"'The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)); *see also Hernandez v. Larry Miller Roofing, Inc.*, 628 F. App'x 281, 284 (5th Cir. 2016). An individual's status as an officer or shareholder alone will not subject them to FLSA liability absent some showing "where operational control coincides with one's position as a shareholder, officer, or

owner." *Gray*, 673 F.3d at 355-56 (declining to infer authority to hire and fire based on an argument that a member or officer has inherent power to fire employees). And, so, "[a]n individual's operational control can be shown through his power to hire and fire, ability to supervise, power to set wages, and maintenance of employment records." *See id.* at 357.

Mr. Ako alleges that Mr. Koffi is the "principal, director, officer, and/or owner of ABS." *See* Dkt. No. 1 at 3. And he had the power to hire and fire Mr. Ako. *See id.* In his role as an operating employer at ABS, Mr. Koffi supervised Mr. Ako by determining his schedule, compensation, and assigned job duties. *See id.* at 3,5.

Mr. Ako has plausibly alleged that Mr. Koffi had the power to hire and fire him, meeting one factor of the economic realities test. Mr. Ako's allegations that Mr. Koffi controlled his work plausibly allege Mr. Koffi controlled Mr. Ako's employee work schedule, another factor of the economic realities test. Because Mr. Ako has plausibly alleged two factors of the economic realities test, and Mr. Koffi is the owner of the business, Mr. Ako has sufficiently pleaded an employer-employee relationship between himself and Mr. Koffi.

As to ABS, Mr. Ako alleges that he was employed by ABS as a fire watch service guard from September 2021 to September 2022. Dkt. No. 35-1 at 2. And Defendants made statements to third parties that Mr. Ako earned $15 per hour and worked 100 hours per week. *See* Dkt. No 1. at 5. When Mr. Ako had questions or issues with the scope of his employment, he communicated with the ABS's office manager, Vanessa Rangel. *See* Dkt. No. 35-1 at 2, 4, 5.

All of that is sufficient to plead that there was an employer-employee relationship between Mr. Ako and ABS.

### B. Mr. Ako has not adequately pleaded FLSA coverage.

The employee must also engage in activities covered under the FLSA. Mr. Ako must prove that he was an employee "engaged in commerce or in the production of goods for commerce" or "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a), 207(a).

The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). "[A]n employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State." 29 U.S.C. § 203(j).

The first type of coverage is known as "individual coverage," and the second type of coverage is known as "enterprise coverage." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992).

#### i. Mr. Ako did not adequately plead individual coverage.

A plaintiff must prove that he was an "employee[ ] engaged 'in the production of goods for commerce' ('individual coverage') *or* 'employed in an enterprise engaged in commerce *or* in the production of goods for commerce' ('enterprise coverage')." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (citing 29 U.S.C. §

-12-

207(a)(1))(emphasis in original); see also 29 U.S.C. § 206(a). "*Either* individual *or* enterprise coverage is enough to invoke FLSA protection." *Martin*, 955F.2d at 1032 (emphasis in the original).

For purposes of establishing individual coverage, courts apply a practical test, which looks to whether an employee's work "is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Mendoza v. Detail Sols., LLC*, 911 F. Supp. 2d 433, 439 (N.D. Tex. 2012). "[C]ourts routinely look to whether the employee's work engages him in the actual movement of persons or things." *Id.* at 440 (internal quotation marks omitted). "There is no de minimus requirement. '[A]ny regular contact with commerce, no matter how small, will result in coverage.'" *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (quoting *Marshall v. Victoria Transp. Co.*, 603 F.2d 1122, 1124 (5th Cir. 1979)).

But an employee's work that merely affects commerce is not sufficient to establish individual coverage. *See Barr v. Custom Design & Installation, Inc.*, No. 3:13-cv-4925-M, 2015 WL 1255870, at *3 (N.D. Tex. Mar. 19, 2015). The work must be "entwined with the continuous stream of interstate commerce," and it is not sufficient that the employee "used products that had traveled in interstate commerce." *Sontay v. Hin's Garden*, Civ. A. H:13-cv-3721, 2014 WL 6722507, at *4 (S.D. Tex. Nov. 26, 2014). Working on goods that have previously moved through interstate commerce is not considered "part of the functioning of an instrumentality or facility of interstate commerce," and even purchasing products that have been

-13-

manufactured out of state is insufficient to satisfy individual coverage. *Stanley v. Sawh*, Civ. A. No. H-13-3284, 2016 WL 561177, at *4 (S.D. Tex. Feb. 12, 2016).

Judge Ramirez found that Mr. Ako did not sufficiently plead facts that demonstrated individual coverage because his allegations did not show how his work involved engaging in interstate commerce. *See Ako*, 2023 WL 7752309, at *6 (citing *Blundell v. Lassiter*, No. 3:17-cv-1990-L-BN, 2018 WL 6738046, at *5 (N.D. Tex. May 21, 2018)).

In Mr. Ako's Renewed Motion for Default Judgment, he still alleges individual coverage because of interstate communications. As to Mr. Ako's duties and interstate communications, Mr. Ako states in his declaration:

> 10. As a fire watch services guard, my primary duties were to inspect Defendants' customers' work sites for fire hazards, to report any potential fire risks, and to monitor to ensure there were no fires.
> ….
> 13. When I worked in Texas and Virginia, Mr. Koffi was based out of ABS's California office. He would regularly call me from California to ask for site updates and to provide me with work instructions in order to ensure I was doing my job correctly and that there were no issues with the services ABS was contracted to provide at the site.
> 14. When I had general questions or issues about my employment, I would communicate with Defendants' Office Manager, Vanessa Rangel, who is in Defendants' California office.

Dkt. No. 35-1 at 2.

These allegations in Mr. Ako's declaration still do not show that Mr. Ako's job at ABS was "engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1).

Stating – without any factual support – that he used interstate communications does not establish that Mr. Ako's work "is so directly and vitally

related to ... interstate commerce as to be ... a part of it, rather than isolated local activity." *Mendoza*, 911 F. Supp. 2d at 439. Mr. Ako's description of his duties does not give rise to the inference that his duties were not merely isolated local activities. *See Rodriguez v. Shan Namkeen, Inc.*, No. 3:15-cv-3370-BK, 2017 WL 76929, at *2 (N.D. Tex. Jan. 9, 2017) ("Plaintiff states that he was employed as a 'delivery driver and laborer,' ... but fails to support his claim with factual enhancements that would allow the Court to determine that his job was not simply isolated local activity.").

And, while Mr. Ako's allegations describe his work performed for ABS, they fail to show how that work engages them in interstate commerce. *See Morrow v. JW Elec. Inc.*, No. 3:11-cv-1988-D, 2011 WL 5599051, at *3 (N.D. Tex. Nov. 16, 2011) ("[Plaintiff] argues that he has adequately pleaded individual coverage by alleging that he was employed by defendants 'to perform electrical work' that entailed 'travel[ing] to various homes and businesses ... [to] perform whatever repair work ... needed to be done.' ... But this allegation, even when assumed to be true, does not show that [Plaintiff] was 'engaged in commerce or in the production of goods for commerce.'" (citation omitted)).

"Mere use of an instrumentality, without any factual allegations of interstate interaction is not sufficient to establish individual coverage." *Ako,* 2023 WL 7752309, at *5 (N.D. Tex. Oct. 5, 2023) (citing *Devore v. Lyons*, No. 3:16-cv-1083-BN, 2016 WL 6277810, at *9 (N.D. Tex. Oct. 25, 2016) ("While interstate phone calls, transactions, and mail could be indicative of interstate commerce ... and Plaintiff has stated that

she prepared business paperwork and called vendors, she has failed to specify the interstate nature of those activities."); *cf. Vela v. M&G USA Corp.*, No. 2:17-CV-13, 2020 WL 421188, at *3 (S.D. Tex. Jan. 27, 2020) (finding that the plaintiff adequately alleged FLSA coverage when he stated that he "communicated across state lines with his employers, utilized the Internet in the course and scope of his employment, and made telephone calls out of state to various individuals and entities in the furtherance of his duties. He also worked daily with foreign materials, including steel from China.").

> ii. <u>Mr. Ako did not adequately plead enterprise coverage.</u>

For purposes of establishing enterprise coverage, the FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" as one that

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $ 500,000 (exclusive of excise taxes at the retail level that are separately stated)[.]

*Blundell*, 2018 WL 6738046, at *7 (citing 29 U.S.C. § 203(s)(1)).

The first prong of the enterprise coverage definition can be met in one of two ways: (1) the "engaged in commerce" clause or (2) the "handling" clause.

The "engaged in commerce" clause can be analyzed essentially in the same manner as individual coverage is analyzed, although the question as to individual coverage is whether the plaintiff himself engaged in interstate commerce, whereas

-16-

the question in an enterprise coverage analysis is whether any two or more of the business's employees engaged in interstate commerce. *See Mendoza*, 911 F. Supp. 2d at 439 & n.4.

The handling clause requires the court to find that an employer had more than one employee "handling, selling, or otherwise working on" goods that have moved in interstate commerce. *See* 29 U.S.C. § 203(s)(1)(A)(i); *Mendoza*, 911 F. Supp. 2d at 441.

In his Renewed Motion for Default Judgment, Mr. Ako cites to his original complaint where he states:

> 14. During the relevant time, Defendants had at least two employees who engaged in interstate commerce or business transactions, or in the production of goods for interstate commerce, or who handled, sold, or otherwise worked on goods or materials that had been moved in or produced for interstate commerce.
> 15. Defendants' annual gross income of sales made, or business done was not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) during each of the three calendar years preceding the filing of this Original Complaint.

Dkt. No. 1 at 3.

As before, this is not sufficient for Mr. Ako to plead that FLSA covers ABS under the enterprise coverage theory. *See Ako*, 2023 WL 7752309, at *6 (N.D. Tex. Oct. 5, 2023) ("Plaintiff's threadbare allegations fail to raise any facts suggesting the interstate nature of Defendants' operations []." (citations omitted)).

### Recommendation

The Court should deny Plaintiff's Renewed Motion for Default Judgment [Dkt. No. 35].

A copy of these findings, conclusions, and recommendation shall be served on

all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 19, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE